IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JERMAINE JACKSON, #A76 140 799 | * | |
| Petitioner, | | |
| v. | * | CIVIL ACTION NO. AW-05-1810 |
| WARDEN TIMOTHY K. CAMERON | * | |
| Respondent. | | |

\*\*\*\*\*\*

**MEMORANDUM**

Petitioner Jermaine Jackson is an inadmissible alien from Antigua presently confined at the St. Mary's County Detention Center in Leonardtown, Maryland. On July 1, 2005, he filed a letter with the Clerk seeking release from Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") custody. The document was construed as a 28 U.S.C. § 2241 petition for writ of habeas corpus relief and Respondent was directed to file an answer.[1] On August 10, 2005, Respondent answered. Paper No. 3. The Petition is ready for the court's consideration. An oral hearing is unnecessary. *See* Local Rule 105.6. (D. Md. 2004). For reasons to follow, the Petition shall be dismissed without prejudice.

Procedural History

Petitioner is a native and citizen of Antigua who had previously entered the United States with a non-immigrant visa. Paper No. 3, Ex. A. On February 27, 1999, he sought admission to the United States at J.F.K. International Airport in New York, New York, but was denied admission and immediately removed after admitting to previously overstaying his non-immigrant visa and having committed multiple convictions. *Id*.

Petitioner recently came into ICE custody on January 19, 2005, when he was arrested during

---

[1] Petitioner was directed to file the $5.00 habeas fee or an indigency motion. As of the within signature date he has filed neither the fee nor motion.

an ICE New York field operation. The arrest occurred after information came to light that Petitioner was in the United States illegally and was living with his wife in the Bronx, New York. Paper No. 3, Ex. A. ICE officers reviewed Petitioner's file and issued a decision to reinstate his prior deportation order. *Id*., Ex. B.

Respondent states that an initial request for a travel document was sent to the Embassy of Antigua and Barbuda on February 9, 2005. *Id*., Ex. C, Greene Decl. On March 29, 2005, Petitioner's Deportation Officer spoke to Embassy officials and learned that authorization to issue the travel document had not been received as of that date. *Id*. On April 19, 2005, Deportation Officer Greene again called the Embassy and was informed that the travel document had not been received from Antigua. *Id*. On April 26, 2005, a decision was made to continue Petitioner's detention because ICE believed that a travel document would be issued in the reasonably foreseeable future. *Id*., Ex.D.

On May 25, 2005, Greene received Petitioner's original expired passport from Petitioner's wife and immediately sent the passport to the Embassy. *Id*., Ex. C , Greene Decl. Greene affirms that since that date she has spoken to officials at the Embassy several times and informed that while the Embassy believes that Petitioner is Antiguan, police authorities in Antigua were conducting an investigation to verify Petitioner's identity and citizenship. *Id*. An Embassy official informed Greene that such investigations are low priority in Antigua and that until approval is received from Antigua, "her hands are tied" with regard to the issuance of the travel document. *Id*. Based on this information, a second decision to continue Petitioner's detention was issued on July 22, 2005. *Id*., Ex. E. Deportation Officer Greene spoke to an Embassy official on August 3, 2005, and was informed that the authorization for issuance of the travel document had not yet been received. *Id*., Ex. C, Greene Decl.

Analysis

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Immigration and Naturalization Act, § 241(a)(6), 8 U.S.C. § 1231(a)(6), read in light of the due process protections to be afforded to aliens who have been admitted into the United States, generally permits the detention of such an alien under a final order of removal only for a period reasonably necessary to bring about that alien's removal from the United States. *Zadvydas*, 533 U.S. at 701. It was concluded that the detention of such an alien beyond the statutory removal period, for up to six months after the removal order becomes final, is "presumptively reasonable." *Id.* After six months, if an alien can provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must rebut the alien's showing in order to continue the alien in detention.[2] *Id*.

The court finds no substantive or procedural due process violation associated with Petitioner's continued post-removal-order detention at this time. Petitioner came into ICE custody in New York on January 19, 2005. Soon after, an initial request for a travel document was sent to the Embassy of Antigua and Barbuda. On March 3, 2005, he was moved to the St. Mary's County Detention Center. Respondent has made periodic follow-up telephone calls and contact with the Embassy and, in May of 2005, forwarded Petitioner's expired passport to Embassy officials. The court agrees that ICE has been diligent in contacting the Embassy. At present, the delay in obtaining the travel document is attributable to an Antiguan police investigation into Petitioner's identity and citizenship. Respondent indicates that the Embassy of Antigua and Barbuda regularly issues travel documents and that ICE has recently received six travel documents for nationals of Antigua and Barbuda. Paper No. 3, Ex. E. More importantly, Deportation Officer Greene affirms that while the

---

[2] The scope of *Zadvydas* has been broadened to afford the same due process protections to inadmissible aliens such as Petitioner. *See Clark v. Suarez-Martinez*, 125 S.Ct. 716, 722-23 (2005).

issuance of travel documents from Antigua has historically been slow, she does not recall a single case in which the government of Antigua and Barbuda Coast ultimately refused to issue a travel document for an alien whose identity and citizenship were not at issue. Paper No. 3, Ex. C, Greene Decl. Given this uncontroverted information, Petitioner has failed to rebut the Respondent's statements to establish that there is no significant likelihood of his removal to Antigua in the reasonably foreseeable future.

## Conclusion

For the aforementioned reasons, the Petition shall be dismissed without prejudice. A separate Order follows.

Date: September 19, 2005                              "s"
                                                            Alexander Williams Jr.
                                                            United States District Judge